STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION
AND NANTAHALA POWER AND LIGHT COMPANY v. RUFUS L.
EDMISTEN, ATTORNEY GENERAL

No. 80

(Filed 31 January 1977)

1. Utilities Commission § 6— authority to reconsider rate order

Until an order of the Utilities Commission in a rate case became
final by expiration of the time allowed for appeal, G.S. 62-80 au-
thorized the Commission, upon its own motion or upon the motion of
any party, to reconsider its previously issued order, upon proper notice
and hearing, upon the record already compiled, without requiring the
institution of a new and independent proceeding by complaint or other-
wise.

2. Utilities Commission § 6— reconsideration of rate order — notice and
opportunity to be heard

The Utilities Commission did not fail to comply with the require-
ments of notice and opportunity to be heard set forth in G.S. 62-80
for reconsideration of an electric power rate order and, if it did, the
Attorney General was not prejudiced thereby, where the Commission's
order setting the matter for oral argument focused attention on
whether the full increases requested by the utility, which had been
placed into effect prior to the Commission's order, should be continued
in effect rather than the lesser rate increase granted by the Commis-
sion in its order; a brief setting forth in detail the extent of the recon-
sideration requested by the utility was delivered to the Attorney
General's office prior to the oral argument on the motion to reconsider;
and the Attorney General did not appear at or participate in the oral
argument of the motion and did not request a bill of particulars or a
continuance.

3. Utilities Commission § 6— rate hearing — consideration of data in
Moody's Investment Service

Since G.S. 62-65(b) expressly authorized the Utilities Commis-
sion to take judicial notice of data published by reputable financial
reporting services, the Commission did not err in considering the earn-
ings of 24 electric utilities as shown in Moody's Investment Service
in determining a fair rate of return to be allowed a power company.

4. Utilities Commission § 6— rate hearing — determination of fair rate
of return

Although Nantahala Power and Light Company is a unique
electric utility and differences between Nantahala and Moody's 24
electric utilities are sufficient to raise grave doubt as to whether the
earnings of those electric utility companies are of substantial probative
value in determining a fair rate of return to be allowed Nantahala, the
weight of such evidence was for the Commission, and it was for
the Commission, not the reviewing court, to determine what is a fair

rate of return so long as there is substantial evidence in the record which supports its determination.

**5. Utilities Commission § 6— substantial modification of rate order — misapprehension of facts**

There is no merit in the contention that upon reconsideration of a rate order the Utilities Commission may make a substantial change in the relief allowed thereby only if (1) the original order was predicated upon an error of law, or (2) there has been a showing of a change of condition, since G.S. 62-80 is broad enough to permit the Commission to modify and amend its order, even substantially, for the reason that, upon further consideration of the record before it, the Commission comes to the opinion that its order was due to the Commission's misapprehension or disregard of the facts shown by the evidence received at the original hearing.

**6. Utilities Commission § 6— reconsideration of rate order — reappraisal of witness's testimony**

Nothing in G.S. 62-80 prevents the Utilities Commission from concluding on reconsideration that its original lack of enthusiasm for the testimony of a witness who testified concerning rate of return was ill-founded.

**7. Utilities Commission § 6— reconsideration of rate order — increase in rate of return**

Upon reconsideration by the Utilities Commission of an order allowing a power company to earn a rate of return of 3.72 per cent on the fair value of its properties, the evidence and findings were sufficient to support the Commission's determination in its final order that the company should be allowed a rate of return of 5.30 per cent on the value of its properties.

**8. Utilities Commission § 6— rate of return — attraction of capital**

An electric utility was entitled to a rate of return adequate to attract capital in the market place even though the utility contemplated no substantial expansion of its plant and so did not contemplate the issuance of stocks or bonds. G.S. 62-133(b)(4).

APPEAL by the Attorney General from the unpublished decision of the Court of Appeals, filed 21 July 1976, affirming an order of the North Carolina Utilities Commission.

On 29 March 1974, Nantahala Power and Light Company, hereinafter called Nantahala, applied to the Commission for authority to increase its retail rates for electric power so as to produce additional annual revenue in the amount of $1,523,544 and for authority to incorporate into each of its rate schedules a Purchased Power Cost Adjustment Clause, somewhat similar to the Fuel Adjustment Clause approved by this Court on 21

December 1976 in *Utilities Commission v. Edmisten,* 291 N.C. 327, 230 S.E. 2d 651.

The Commission conducted a public hearing at which the Attorney General, who had intervened on behalf of the public, appeared. The Commission not having issued its order in the matter within the time prescribed by G.S. 62-134(b), the rates so proposed by Nantahala were put into effect by the utility, subject to the order of the Commission ultimately to be entered in the proceeding.

On 23 April 1975, the Commission entered its order authorizing Nantahala to increase its rates sufficiently to produce additional annual revenues of $668,000 only, authorizing it to incorporate into its rate schedules the requested Purchased Power Cost Adjustment Clause and directing Nantahala to file new rate schedules in accordance with such order on or before 1 May 1975. In this order the Commission made ten findings of fact, summarized as follows:

1. Nantahala is a duly organized public utility company under the laws of North Carolina, furnishing electric power in the western portion of the State.

2. The reasonable original cost, less depreciation, of Nantahala's property used and useful in providing retail electric service in North Carolina is $20,019,010, including an allowance for working capital.

3. The reasonable allowance for working capital is $150,354.

4. The fair value of Nantahala's properties so used and useful is $24,866,458, including the allowance for working capital.

5. Nanahala's gross revenues for the test year, after appropriate adjustments under the old rates were $6,554,348 and under the rates proposed by Nantahala would be $8,077,892.

6. Operating expenses, including depreciation, were $5,925,317.

7. The fair rate of return which Nantahala should have the opportunity to earn on the fair value of its said properties is 3.72 per cent, which is 4.60 per cent on its "fair value equity investment" in such properties and to earn which would require additional revenue from North Carolina retail customers of $668,000.

8. The New Fontana Agreement and the resultant Apportionment Agreement with Nantahala, the Tennessee Valley Authority and Topoco (a corporate subsidiary of the Aluminum Company of America also engaged in the generation of electric power), dealing with the generation of power by Nantahala, the disposition of such power and the acquisition of power by Nantahala for use of its customers, is reasonable.

9. A Purchased Power Adjustment Clause is a reasonable and just method by which Nantahala can recover part of its reasonable operating expenses.

10. The rate design proposed by Nantahala should be modified as set forth in the Commission's order.

The Attorney General took no exception to these findings and does not contend that any of them is not supported by the evidence set forth in the record of the hearing before the Commission. Upon this appeal the Attorney General does not question the reasonableness or validity of the Purchased Power Cost Adjustment Clause so approved by the Commission.

On 15 May 1975, Nantahala advised the Commission by letter that due to inadequacy of the time allowed, it had not filed the rate schedules as directed by the order of the Commission and further advised the Commission that Nantahala intended "within the next few days to file with the Commission a motion seeking reconsideration by the Commission of its order in this docket which was dated April 23, 1975." A copy of this letter was delivered to the Attorney General.

On 21 May 1975, without waiting for such formal motion by Nantahala, the Commission entered an order reciting its receipt of the above mentioned letter from Nantahala and stating, "The Commission will treat said letter as a motion for reconsideration of the order of 23 April 1975." In this order the Commission set such "motion" for oral argument on 10 June 1975 and directed that the rates in effect prior to 23 April 1975 (the rates proposed by Nantahala and put into effect by it as above mentioned due to the delay in the issuance of the Commission's order) be reinstated "pending disposition of said reconsideration."

On 10 June 1975, oral argument before the Commission was had upon the "motion" for reconsideration, notice thereof having been given to the Attorney General. Nantahala filed a

brief setting forth the nature of the modification of the order of 23 April 1975 which it deemed proper, a copy of such brief having previously been delivered by Nantahala to the Attorney General. Nantahala and the attorney for the Commission staff participated in the oral argument but the Attorney General did not appear or file a brief. No new evidence was presented to the Commission.

On 8 August 1975, the Commission entered an order which: (1) Amended the order of 23 April 1975 to allow a rate increase sufficient to produce additional annual revenue of $1,523,544, this being a return of 5.30 per cent on the fair value of Nantahala's properties as previously found by the Commission; (2) approved the rate schedules then in effect, which, as above shown, were those proposed originally by Nantahala; and (3) approved the Purchased Power Adjustment Clause, this clause having been suspended pending such reconsideration of the order of 23 April 1975. That is, in the order of 8 August 1975, the Commission gave to Nantahala all that Nantahala had requested in its original application. In its order the Commission stated, among other things:

> "In reconsideration the Commission takes judicial notice of the rate of return on average common equity of Moody's 24 electric utilities for the year 1973 was 10.64%, and the average rate of return over the years 1965-1973 was 11.6%. The return the Commission allowed Nantahala resulted in a 6.05 per cent return on common equity using the actual capital structure of 0.99 per cent fair value common equity [apparently meaning the excess of fair value over original cost depreciated] and 19.01 per cent cost free capital.

> "The Commission recognizes that Nantahala will have to approximately double its existing transmission and distribution plant in order to adequately provide the service demanded by its customers. The Commission agrees with counsel for the applicant that the test for a fair rate of return is what it would require for the company to attract capital, and not whether in fact the company needs to attract capital. The fair rate of return required for Nantahala is at least that rate of return on average common equity of Moody's 24 electric utilities. Moreover, the Commission observes that ALCOA may not, in the future, sup-

ply Nantahala with its requisite need for capital, thus, sending Nantahala to the market place to secure the capital it needs.

\* \* \*

"Upon reconsideration of the Order of April 23, 1975, the Commission concludes and so finds that the rate of return approved in its order of April 23, 1975, is inadequate and will not allow adequate service by Nantahala, and that the proposed rates as filed in the application to produce additional revenue of $1,523.544 based on a test year ending June 30, 1973, will produce test year net operating income for a return of $1,319,057, and a rate return of 5.30% on the fair value rate base, and that said rates and said return are just and reasonable and necessary to allow an adequate rate of return for Nantahala to compete in the market for capital funds on terms which are reasonable and fair to its customers and to its existing investors, as provided in G.S. 62-133 (b) (4)."

Within the time allowed the Attorney General filed exceptions to the order of 8 August 1975 and appealed therefrom to the Court of Appeals. No exception relates to the Purchased Power Cost Adjustment Clause. The grounds for appeal, as set forth in the brief of the Attorney General in the Court of Appeals, were: (1) The Commission acted arbitrarily and without authority of law in finding that the rate of return approved by it in its order of 23 April 1975 was inadequate and in issuing the amended order for that the Commission failed to make adequate factual findings as to the reasons or bases upon which it based its conclusions; (2) the Commission had no authority to consider and allow an amendment to its prior final order which increased the relief allowed "on the basis of a change of mind and without finding that it had made an error of law or that new evidence required the amendment"; and (2) the rehearing proceeding was conducted improperly in that no notice was given "of what reconsideration of the prior order was to be made at the rehearing."

The Court of Appeals found no merit in these contentions.

*Rufus L. Edmisten, Attorney General, by Robert P. Gruber, Special Deputy Attorney General.*

*Edward B. Hipp, Commission Attorney, by Dwight W. Allen, Assistant Commission Attorney, for the North Carolina Utilities Commission.*

*Joyner & Howison by R. C. Howison, Jr., and G. Clark Crampton for Nantahala Power and Light Company.*

LAKE, Justice.

G.S. 62-80 provides:

> "The Commission may at any time upon notice to the public utility and to the other parties of record affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when served upon the public utility affected, have the same effect as is herein provided for original orders or decisions."

It will be observed that this statute does not require a motion by the public utility, or other party, as a condition precedent to the authority of the Commission to amend its previously issued order. Since the Commission may do so on its own motion, it is not necessary to consider whether the Commission acted with undue haste in treating as a motion by Nantahala the letter from Nantahala announcing its intent to file a motion for reconsideration.

G.S. 62-90 permits an appeal by any party to a proceeding before the Commission from any final order or decision therein within 30 days after the entry of such final order or decision, or within such time thereafter as may be fixed by the Commission by its order made within such 30 day period. The statute provides that the appealing party shall file with the Commission notice of appeal and exceptions. It further provides that the Commission, on motion of any party or on its own motion, may set such exceptions for further hearing before the Commission.

[1] Both the letter written by Nantahala to the Commission and the Commission's order setting the matter for argument on the "motion" for reconsideration were issued prior to the expiration of the time allowed for an appeal by Nantahala from the order of 23 April 1975. We think it clear that, at least until the order became final by expiration of the time allowed for

appeal, G.S. 62-80 authorized the Commission, upon its own motion or upon the motion of any party, to reconsider its previously issued order, upon proper notice and hearing, upon the record already compiled, without requiring the institution of a new and independent proceeding by complaint or otherwise.

[2] The order of the Commission setting the matter for further argument and reconsideration stated that "pending such reconsideration, the rates as applied for and in effect as of 23 April 1975 should continue in effect, subject to refund." The letter of Nantahala to the Commission announced that Nantahala would seek "reconsideration by the Commission of its order in this docket which was dated April 23, 1975." Since the order granted Nantahala permission to put into effect the Purchased Power Cost Adjustment Clause, it would require very little exercise of imagination to suppose that the reconsideration desired by Nantahala was with reference to the Commission's having granted only about 40 per cent of the proposed increase in Nantahala's retail rate schedules. The above quoted statement in the Commission's order setting the matter for oral argument would seem clearly to focus attention on whether the full increases requested by Nantahala and, as above noted, put into effect by it prior to the order of 23 April 1975, should be continued in effect rather than the lesser rate increase granted by the Commission in its said order. The appellate brief of Nantahala states that the brief which it filed with the Commission, which is not part of the record before us on this appeal, was delivered to the Attorney General's office prior to the oral argument on the motion to reconsider and that this brief set forth in detail the extent of the reconsideration requested by Nantahala. Nevertheless, the Attorney General did not appear at or participate in the oral argument of the motion to reconsider and did not request a bill of particulars as to the matters intended to be discussed therein or a continuance of the hearing. Under these circumstances, we find no merit in the contention that the Commission failed to comply with the requirements of notice and opportunity to be heard set forth in G.S. 62-80, or, if it did, that the Attorney General was prejudiced thereby.

The final order issued 8 August 1975 does not purport to disturb, rescind or modify Findings 1 through 6 and 8 through 10 in the order of the Commission issued 23 April 1975. These findings, therefore, remain in full force and effect. The Attor-

ney General does not challenge the sufficiency of the evidence in the record before the Commission to support them. The only finding in the original order changed by the final order is No. 7, which relates to the fair rate of return upon the fair value of Nantahala's properties used and useful in rendering retail service to its customers in North Carolina. The original order found that this was 3.72 per cent. The amended order states the Commission's finding that such rate of return is inadequate, that the rates for service proposed by Nantahala would produce a rate of return on the fair value of the properties of 5.30 per cent, which is a matter of arithmetical computation, and that such return is "necessary to allow an adequate rate of return for Nantahala to compete in the market for capital funds on terms which are reasonable and fair to its customers and to its existing investors, as provided in G.S. 62-133(b)(4)." This is the test of a fair return specifically prescribed by the said statute. The Attorney General does not challenge the sufficiency of the evidence in the record before the Commission to support the finding that a rate of return of 5.3 per cent on the fair value of the company's properties, used and useful in rendering its service in this State, is necessary to enable it to compete in the market for capital funds. Our examination of the record discloses that it would support, though not require, a finding that a higher rate of return than 5.30 per cent would be fair and reasonable.

[3] The record before the Commission did not include testimony or documentary evidence as to the earnings of the 24 electric utilities whose earnings are shown in Moody's Investment Service. However, G.S. 62-65(b) expressly authorizes the Commission to take judicial notice of data published by reputable financial reporting services. Consequently, there was no error in the consideration of this data by the Commission in determining a fair rate of return to be allowed Nantahala.

[4] The Attorney General is entirely correct in his contention that the record shows many respects in which Nantahala is a unique electric utility. Among other things, it is a completely owned subsidiary of the Aluminum Company of America (ALCOA), that company supplied all of its presently invested capital, its present capitalization consists entirely of funds raised by the issuance of common stocks, its generating facilities are all hydro-electric plants, it is a small company, it serves rugged, mountainous territory, relatively thinly populated, its

largest industrial customer has under consideration plans for a withdrawal from the territory. These differences between Nantahala and Moody's 24 electric utilities are sufficient to raise grave doubt as to whether the earnings of those electric utility companies are of substantial probative value in determining a fair rate of return to be allowed Nantahala. The weight of the evidence is, however, for the Commission, not the reviewing court. It is for the Commission, not the reviewing court, to determine what is a fair rate of return, so long as there is substantial evidence in the record which supports its determination. *Utilities Commission v. Duke Power Co.,* 285 N.C. 377, 206 S.E. 2d 269 (1974).

[5] We find no merit in the contention of the Attorney General that upon reconsideration of its order the Commission may make a substantial change in the relief allowed thereby only if (1) the original order was predicated upon an error of law, or (2) there has been a showing of change of condition. We think it clear that G.S. 62-80 is broad enough to permit the Commission to modify and amend its order, even substantially, for the reason that, upon further consideration of the record before it, the Commission comes to the opinion that its order was due to the Commission's misapprehension of the facts, or disregard of facts, shown by the evidence received at the original hearing.

[6] We have no knowledge of what arguments were presented to the Commission at the rehearing by Nantahala. The Commission, in its original order, set forth many reasons why it did not accept as accurate the testimony of Nantahala's witness Schlesinger, the only witness who testified concerning rate of return at the original hearing. The credibility of his testimony and the reliability of his expert opinion based thereon are matters for the determination of the Commission, not the reviewing court. We perceive nothing in G.S. 62-80 which prevents the Commission from concluding on reconsideration that its original lack of enthusiasm for the testimony of such witness was ill-founded. It, of course, makes no difference in this respect whether the Commission's further consideration of evidence introduced at the original hearing and its reappraisal thereof leads to an increase in the rate of return previously allowed or to a decrease thereof, and so to a decrease in the rate relief previously allowed the utility.

[7]   We, therefore, conclude that the final order of the Commission, entered 8 August 1975, is based upon findings of fact which, in turn, are supported by evidence in the record before the Commission. We find no error of law in the Commission's determination to reconsider the matter prior to the expiration of the time allowed by the statute for the taking of an appeal from its original order, or in its revision of its original finding of fact as to the reasonableness of allowing Nantahala to set rates sufficient to enable it to earn 5.30 per cent on the fair value of its properties used and useful in rendering utility service in the State. The authority of the reviewing court to modify or reverse a decision of the Commission allowing an increase in rates for service charged by a public utility is only that prescribed in G.S. 62-94 and we find in the assignments of error made by the Attorney General no basis for concluding that one of those grounds for judicial modification or reversal of the order of 8 August 1975 exists.

Since the return of 5.30 per cent on the fair value of Nantahala's properties is substantially lower than the rate of return which has been usually allowed electric utilities in recent cases coming to the attention of this Court, it should be noted that the record before us makes it clear that it is Nantahala's contention that the rate increases applied for by it, and allowed in the order of 8 August 1975, were substantially less than enough to yield to the company a fair rate of return on the fair value of its properties. The testimony of Mr. Schlesinger, the only witness who testified at the hearing with reference to rate of return, taken at its face value, supports this position. As to that, this Court expresses no opinion. The record before us shows clearly that Nantahala is unique among the electric utilities serving in North Carolina. See also, *State ex rel. Utilities Commission v. The Meade Corporation*, 238 N.C. 451, 78 S.E. 2d 290 (1953), where the early history and origin of Nantahala are discussed.

We find nothing in G.S. 62-80 which supports the Attorney General's contention that it is a condition precedent to modification of its earlier order that the Commission set forth its reasons for its change of mind concerning the credibility of the testimony of Witness Schlesinger as to what constitutes a fair rate of return to Nantahala.

G.S. 62-79 (a) does require all final orders of the Commission to include "Findings and Conclusions *and the reasons or*

*bases therefor* upon all the material issues of fact, law, or discretion presented in the record." (Emphasis added.) We are of the opinion, however, that the order of 23 April 1975, as modified on 8 August 1975, meets this statutory requirement.

[8] It is apparent, from the supporting reasons stated in the order of 23 April 1975, that the Commission then believed Nantahala had no need to attract new capital in the market place and, therefore, a rate of return adequate to attract capital in the market was not required. This is contrary to G.S. 62-133(b)(4). Thus, the original order was based, at least in part, upon an error of law. Even though a utility contemplates no substantial expansion of its plant, and so presently does not contemplate the issuance of either stocks or bonds, it is, nevertheless, entitled to charge rates sufficient to enable it to earn a fair rate of return, as defined in G.S. 62-133(b)(4), upon the fair value of its properties used and useful in rendering its service in this State.

Affirmed.