232 S.E.2d 177 (1977)
291 N.C. 575
STATE of North Carolina ex rel. UTILITIES COMMISSION and Nantahala Power and Light Company
v.
Rufus L. EDMISTEN, Attorney General.
No. 80.
Supreme Court of North Carolina.
January 31, 1977.
*180 Rufus L. Edmisten, Atty. Gen., by Robert P. Gruber, Sp. Deputy Atty. Gen., Raleigh.
Edward B. Hipp, Com'n Atty., by Dwight W. Allen, Asst. Com'n Atty., Raleigh, for N. C. Utilities Com'n.
Joyner & Howison by R. C. Howison, Jr., and G. Clark Crampton, Raleigh, for Nantahala Power & Light Co.
LAKE, Justice.
G.S. 62-80 provides:
"The Commission may at any time upon notice to the public utility and to the other parties of record affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it. Any order rescinding, altering or amending a prior order or decision shall, when *181 served upon the public utility affected, have the same effect as is herein provided for original orders or decisions."
It will be observed that this statute does not require a motion by the public utility, or other party, as a condition precedent to the authority of the Commission to amend its previously issued order. Since the Commission may do so on its own motion, it is not necessary to consider whether the Commission acted with undue haste in treating as a motion by Nantahala the letter from Nantahala announcing its intent to file a motion for reconsideration.
G.S. 62-90 permits an appeal by any party to a proceeding before the Commission from any final order or decision therein within 30 days after the entry of such final order or decision, or within such time thereafter as may be fixed by the Commission by its order made within such 30 day period. The statute provides that the appealing party shall file with the Commission notice of appeal and exceptions. It further provides that the Commission, on motion of any party or on its own motion, may set such exceptions for further hearing before the Commission.
Both the letter written by Nantahala to the Commission and the Commission's order setting the matter for argument on the "motion" for reconsideration were issued prior to the expiration of the time allowed for an appeal by Nantahala from the order of 23 April 1975. We think it clear that, at least until the order became final by expiration of the time allowed for appeal, G.S. 62-80 authorized the Commission, upon its own motion or upon the motion of any party, to reconsider its previously issued order, upon proper notice and hearing, upon the record already compiled, without requiring the institution of a new and independent proceeding by complaint or otherwise.
The order of the Commission setting the matter for further argument and reconsideration stated that "pending such reconsideration, the rates as applied for and in effect as of 23 April 1975 should continue in effect, subject to refund." The letter of Nantahala to the Commission announced that Nantahala would seek "reconsideration by the Commission of its order in this docket which was dated April 23, 1975." Since the order granted Nantahala permission to put into effect the Purchased Power Cost Adjustment Clause, it would require very little exercise of imagination to suppose that the reconsideration desired by Nantahala was with reference to the Commission's having granted only about 40 per cent of the proposed increase in Nantahala's retail rate schedules. The above quoted statement in the Commission's order setting the matter for oral argument would seem clearly to focus attention on whether the full increases requested by Nantahala and, as above noted, put into effect by it prior to the order of 23 April 1975, should be continued in effect rather than the lesser rate increase granted by the Commission in its said order. The appellate brief of Nantahala states that the brief which it filed with the Commission, which is not part of the record before us on this appeal, was delivered to the Attorney General's office prior to the oral argument on the motion to reconsider and that this brief set forth in detail the extent of the reconsideration requested by Nantahala. Nevertheless, the Attorney General did not appear at or participate in the oral argument of the motion to reconsider and did not request a bill of particulars as to the matters intended to be discussed therein or a continuance of the hearing. Under these circumstances, we find no merit in the contention that the Commission failed to comply with the requirements of notice and opportunity to be heard set forth in G.S. 62-80, or, if it did, that the Attorney General was prejudiced thereby.
The final order issued 8 August 1975 does not purport to disturb, rescind or modify Findings 1 through 6 and 8 through 10 in the order of the Commission issued 23 April 1975. These findings, therefore, remain in full force and effect. The Attorney General does not challenge the sufficiency of the evidence in the record before the Commission *182 to support them. The only finding in the original order changed by the final order is No. 7, which relates to the fair rate of return upon the fair value of Nantahala's properties used and useful in rendering retail service to its customers in North Carolina. The original order found that this was 3.72 per cent. The amended order states the Commission's finding that such rate of return is inadequate, that the rates for service proposed by Nantahala would produce a rate of return on the fair value of the properties of 5.30 per cent, which is a matter of arithmetical computation, and that such return is "necessary to allow an adequate rate of return for Nantahala to compete in the market for capital funds on terms which are reasonable and fair to its customers and to its existing investors, as provided in G.S. 62-133(b)(4)." This is the test of a fair return specifically prescribed by the said statute. The Attorney General does not challenge the sufficiency of the evidence in the record before the Commission to support the finding that a rate of return of 5.3 per cent on the fair value of the company's properties, used and useful in rendering its service in this State, is necessary to enable it to compete in the market for capital funds. Our examination of the record discloses that it would support, though not require, a finding that a higher rate of return than 5.30 per cent would be fair and reasonable.
The record before the Commission did not include testimony or documentary evidence as to the earnings of the 24 electric utilities whose earnings are shown in Moody's Investment Service. However, G.S. 62-65(b) expressly authorizes the Commission to take judicial notice of data published by reputable financial reporting services. Consequently, there was no error in the consideration of this data by the Commission in determining a fair rate of return to be allowed Nantahala.
The Attorney General is entirely correct in his contention that the record shows many respects in which Nantahala is a unique electric utility. Among other things, it is a completely owned subsidiary of the Aluminum Company of America (ALCOA), that company supplied all of its presently invested capital, its present capitalization consists entirely of funds raised by the issuance of common stock, its generating facilities are all hydroelectric plants, it is a small company, it serves rugged, mountainous territory, relatively thinly populated, its largest industrial customer has under consideration plans for a withdrawal from the territory. These differences between Nantahala and Moody's 24 electric utilities are sufficient to raise grave doubt as to whether the earnings of those electric utility companies are of substantial probative value in determining a fair rate of return to be allowed Nantahala. The weight of the evidence is, however, for the Commission, not the reviewing court. It is for the Commission, not the reviewing court, to determine what is a fair rate of return, so long as there is substantial evidence in the record which supports its determination. Utilities Commission v. Duke Power Co., 285 N.C. 377, 206 S.E.2d 269 (1974).
We find no merit in the contention of the Attorney General that upon reconsideration of its order the Commission may make a substantial change in the relief allowed thereby only if (1) the original order was predicated upon an error of law, or (2) there has been a showing of change of condition. We think it clear that G.S. 62-80 is broad enough to permit the Commission to modify and amend its order, even substantially, for the reason that, upon further consideration of the record before it, the Commission comes to the opinion that its order was due to the Commission's misapprehension of the facts, or disregard of facts, shown by the evidence received at the original hearing.
We have no knowledge of what arguments were presented to the Commission at the rehearing by Nantahala. The Commission, in its original order, set forth many reasons why it did not accept as accurate the testimony of Nantahala's witness Schlesinger, the only witness who testified concerning rate of return at the original *183 hearing. The credibility of his testimony and the reliability of his expert opinion based thereon are matters for the determination of the Commission, not the reviewing court. We perceive nothing in G.S. 62-80 which prevents the Commission from concluding on reconsideration that its original lack of enthusiasm for the testimony of such witness was ill-founded. It, of course, makes no difference in this respect whether the Commission's further consideration of evidence introduced at the original hearing and its reappraisal thereof leads to an increase in the rate of return previously allowed or to a decrease thereof, and so to a decrease in the rate relief previously allowed the utility.
We, therefore, conclude that the final order of the Commission, entered 8 August 1975, is based upon findings of fact which, in turn, are supported by evidence in the record before the Commission. We find no error of law in the Commission's determination to reconsider the matter prior to the expiration of the time allowed by the statute for the taking of an appeal from its original order, or in its revision of its original finding of fact as to the reasonableness of allowing Nantahala to set rates sufficient to enable it to earn 5.30 per cent on the fair value of its properties used and useful in rendering utility service in the State. The authority of the reviewing court to modify or reverse a decision of the Commission allowing an increase in rates for service charged by a public utility is only that prescribed in G.S. 62-94 and we find in the assignments of error made by the Attorney General no basis for concluding that one of those grounds for judicial modification or reversal of the order of 8 August 1975 exists.
Since the return of 5.30 per cent on the fair value of Nantahala's properties is substantially lower than the rate of return which has been usually allowed electric utilities in recent cases coming to the attention of this Court, it should be noted that the record before us makes it clear that it is Nantahala's contention that the rate increases applied for by it, and allowed in the order of 8 August 1975, were substantially less than enough to yield to the company a fair rate of return on the fair value of its properties. The testimony of Mr. Schlesinger, the only witness who testified at the hearing with reference to rate of return, taken at its face value, supports this position. As to that, this Court expresses no opinion. The record before us shows clearly that Nantahala is unique among the electric utilities serving in North Carolina. See also, State ex rel. Utilities Commission v. The Meade Corporation, 238 N.C. 451, 78 S.E.2d 290 (1953), where the early history and origin of Nantahala are discussed.
We find nothing in G.S. 62-80 which supports the Attorney General's contention that it is a condition precedent to modification of its earlier order that the Commission set forth its reasons for its change of mind concerning the credibility of the testimony of witness Schlesinger as to what constitutes a fair rate of return to Nantahala.
G.S. 62-79(a) does require all final orders of the Commission to include "Findings and conclusions and the reasons or bases therefor upon all the material issues of fact, law, or discretion presented in the record." (Emphasis added.) We are of the opinion, however, that the order of 23 April 1975, as modified on 8 August 1975, meets this statutory requirement.
It is apparent, from the supporting reasons stated in the order of 23 April 1975, that the Commission then believed Nantahala had no need to attract new capital in the market place and, therefore, a rate of return adequate to attract capital in the market was not required. This is contrary to G.S. 62-133(b)(4). Thus, the original order was based, at least in part, upon an error of law. Even though a utility contemplates no substantial expansion of its plant, and so presently does not contemplate the issuance of either stocks or bonds, it is, nevertheless, entitled to charge rates sufficient to enable it to earn a fair rate or return, as defined in G.S. 62-133(b)(4), upon the fair value of its properties used and useful in rendering its service in this State.
AFFIRMED.